UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL SHELTON, | Case No. 15-cv-02555-JCS |
| Plaintiff, | |
| v. | **ORDER REVIEWING COMPLAINT UNDER 28 U.S.C. § 1915, FINDING PROFESSIONAL MALPRACTICE AND BREACH OF FIDUCIARY DUTY CLAIMS SUFFICIENT, DISMISSING CLAIM UNDER 42 U.S.C. § 1985(3) WITH PREJUDICE, AND ORDERING SERVICE BY UNITED STATES MARSHAL** |
| PATRICK J. MULLIGAN, et al., | |
| Defendants. | |

## I.  INTRODUCTION

Plaintiff Carl Shelton asserts civil rights and professional malpractice claims against Patrick J. Mulligan, Esq. and the Mulligan Law Firm ("collectively, Mulligan Law Firm") and Michael L. Garretson, Esq. and the Garretson Law Firm ("collectively, "Garretson Law Firm"). Mulligan and Garretson were class counsel and the claims administrator, respectively, in a separate class action against drug manufacturer Eli Lilly that resulted in a class action settlement. Having previously granted Plaintiff's Application to Proceed in Forma Pauperis, the Court now considers whether Plaintiff's Complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B), which requires dismissal of an in forma pauperis complaint that is (1) frivolous or malicious, (2) fails to state a claim on which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief.  See *Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996). Plaintiff has consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).   For the reasons stated below, the Court finds that Plaintiff's civil rights claim fails to state a claim as to any defendant; that claim is dismissed with prejudice.

1  Plaintiff's claims for professional negligence and breach of fiduciary duty, asserted against the

2  Mulligan Law Firm, are adequately alleged.

3  **II.     BACKGROUND**

4        Mr. Shelton alleges that he was a member of a certified class in a case against Eli Lilly in

5  which the plaintiffs alleged they had contracted sugar diabetes from their use of the drug Zyprexa,

6  manufactured by Eli Lilly ("the Zyprexa Action").  Compl. ¶ 2.  That case settled, with Eli Lilly

7  creating a settlement fund of $50,000,000 to be disbursed to class members.  *Id.* ¶ 9.  Five percent

8  of the settlement fund was to be allocated to an Extraordinary Injury Fund ("EIF").  *Id.* ¶ 15.

9  Plaintiff alleges that Mulligan Law Firm, located in Dallas Texas, acted as legal counsel in the

10  Zyprexa Action.  *Id.* ¶ 3.  According to Plaintiff, he and Mulligan Law Firm entered into a written

11  agreement whereby the law firm promised to provide legal services to Shelton in connection with

12  the Zyprexa Action.  *Id.* ¶ 3.   Plaintiff alleges that the Garretson Law Firm, which has its principal

13  place of business in Lincoln Nebraska, was the administrator of the settlement funds in the

14  Zyprexa Action.  *Id.* ¶ 4.

15        Mr. Shelton alleges that the settlement agreement provided that counsel would only receive

16  compensation for their work after they provided "documentation that at least 90% of the members

17  of the certified class who had tentatively agreed to be bound by the terms of the proposed

18  agreement had, in fact, executed an/or returned copies of the Settlement and/or Release documents

19  (which had been included in the Settlement Packets . . . )."  *Id.*  ¶ 6.  Plaintiff alleges that class

20  counsel pressured members of the class to "submit the documentation necessary to make the terms

21  of the proposed agreement formally binding on each, and/or all of the parties and/or signatories

22  thereto."  *Id.* ¶ 8.

23        Plaintiff alleges that he was "hesitant" when he learned that class counsel was asking class

24  members to "immediately return" the settlement release documents.  *Id.* ¶ 10.  He alleges that

25  counsel had admonished class members not to "call or write to them to get an update on the status

26  of their individual cases because the firms would need to direct all of their energy towards

27  attaining a final resolution of the subject (proposed) settlement then pending."  *Id.* ¶ 11.  Because

28  of his concern, Mr. Shelton consulted with a Berkeley NAACP attorney, Oliver Jones, who

United States District Court
Northern District of California

2

advised him that he should "go ahead and submit the EIF application and the supporting documentation" and also told Plaintiff that he should execute the "settlement and/or release" documents as well because doing so would "probably lessen the amount of paperwork" for the lawyers and would be "beneficial to the interests of the members of the certified class, including Plaintiff . . . in spite of the fact that the members of the certified class were being asked to sign-off on the lawsuit before it had been determined  whether or not they were eligible to be compensated . . . as a result of having taken Zyprexa and having contracted diabetes, and, if so, what the amount of such compensation would be." *Id*. ¶ 14.

Plaintiff alleges that shortly after speaking with Mr. Jones, he submitted the "Settlement and/or Release documents, together with a completed Application (and supporting documentation) for the Extraordinary Injury Fund." *Id*. ¶ 15.  He followed up by calling the Mulligan Law Firm to ask whether any further documentation was required to support the EIF Application and was told it was not.  *Id*. ¶ 16. A few days later, he received a letter from the administrator, the Garretson Law Firm, thanking him for promptly executing the Settlement and Release documents.  *Id*. ¶ 17. Although the EIF Application had been sent in the same envelope as the Settlement and Release documents, the letter from the Garretson Law Firm did not mention that application.  *Id*. ¶ 18. Plaintiff was subsequently notified by Garretson that it had been determined that he had contracted diabetes as a result of taking Zyprexa.  *Id*. ¶ 19.  As a consequence, he received a settlement check of approximately $2,800.  *Id*. ¶ 20.  Plaintiff did not, however, receive any information about the status of his EIF Application, either from Garretson or class counsel.  *Id*. ¶ 21.  In light of previously warnings not to contact class counsel directly, Plaintiff waited to contact counsel to inquire.  *Id*. ¶ 22.  Eventually, he sent a letter of inquiry to "Plaintiff's Legal Counsel (HUFFINGTON)"[1] and the administrator but received no response.  *Id*. ¶¶ 22-23.  He then sent letters to the Attorneys General of the State of Texas (as to "HUFFINGTON") and Nebraska (as to "GARRETSON") to "complain about the deliberately indifferent [manner] in which Plaintiff's case had been treated, and/or mishandled to date."  *Id*. ¶ 24.  Subsequently, he received a letter

---

[1] Plaintiff does not name "Huffington" as a defendant and has not included any allegations that an entity or individual by that name was involved in the Zyprexa Action.

United States District Court
Northern District of California

from Garretson stating that the claims of the members of the certified class "had been completely resolved and paid" and that "the $179.00 check that was enclosed with the letter dated 6/9/2014, represented the payment of interest owed to Plaintiff." *Id*. ¶ 26.

Plaintiff filed his complaint on June 9, 2015, asserting that there is both diversity and federal question jurisdiction. *Id*. ¶ 1. He asserts three claims in his complaint. First, he asserts a claim for civil conspiracy in violation of 42 U.S.C. § 1985(3). In particular, he asserts that Defendants deprived him of his right to Due Process under the Fifth and Fourteenth Amendments of the U.S. Constitution, and "also conspired to deny and/or deprive Plaintiff of his Constitutional Right to Effective Assistance of Counsel under the Sixth Amendment. *Id*. ¶ 27. According to Plaintiff,

> [a]fter the settlement was reached, the Law Firms of Plaintiff's Legal Counsel (Mulligan) and the settlement administrator (Garretson) became totally engrossed in a concerted effort to get Mulligan's clients, including Plaintiff, to execute and return settlement and/or release documents before the Administrator began its task of determining which members of the certified class would receive payments from the settlement fund because they had contracted sugar diabetes from taking Zyprexa; and/or additionally, which members of the certified class would be entitled to receive an additional payment from an Extraordinary Injury Fund . . . because they had suffered catastrophic injury due to their diabetic condition.

*Id*. ¶ 32. Shelton further alleges in support of this claim that Defendants "knew and/or reasonably should have known that by having clients execute and return Settlement and Release before it had been determined who was going to receive the payment, what, and how much the payment would be, anyone who disagreed with the determinations would be precluded from presenting their disputes by the documents which they had executed previously." *Id*. ¶ 35.

Second, Plaintiff asserts a claim for Professional Negligence against the Mulligan Law Firm. In that claim, he alleges that while the case against Eli Lilly was still pending, he broke his ankle and as a result of complications related to his diabetic condition (which he contracted from taking Zyprexa) he had to have his lower left leg amputated. *Id*. ¶¶ 37-39. Plaintiff alleges that the persons with whom he spoke at the Mulligan Law Firm were "very evasive, and not at all forthcoming with the information he requested." *Id*. ¶ 40. Once Plaintiff submitted his release form, Plaintiff alleges, the Mulligan Law Firm stopped communicating with him, even though the

Zyprexa Action was still pending, and he never received heard anything from the Mulligan Law Firm about the status of his EIF Application. *Id*. ¶ 42.  Plaintiff alleges that the Mulligan Law Firm "failed and/or refused to inform him of his ineligibility for receipt of payment from the Extraordinary  Injury Fund because of a conflict of interest which could have adversely impacted the attorneys ability to get paid if Plaintiff withdrew and/or attempted to revoke his consent to the Settlement; and/or still further, Plaintiff's attorney failed and/or refused to candidly inform Plaintiff that he would be unable to obtain compensation for the catastrophic injury he suffered because it occurred subsequently to the date which the case had been technically settled." *Id*. ¶ 46. According to Plaintiff, the Mulligan Law Firm was guilty of malpractice.

Third, he asserts a claim for breach of fiduciary duty as to the Mulligan Law Firm. *Id*. ¶ 50.

### III.    ANALYSIS

#### A.    Legal Standard

If a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and is permitted to proceed in forma pauperis, the court must undergo a preliminary screening of the complaint and dismiss any claims which: (1) are frivolous and malicious; (2) fail to state a claim upon which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).  To state a claim for relief, Plaintiff must make "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). When reviewing the sufficiency of the Complaint, the Court takes "all allegations of material fact as true and construe(s) them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1990).  The "tenet that a court must accept a complaint's allegations as true," however, "is inapplicable to . . . mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). The complaint need not contain "detailed factual allegations," but must allege facts sufficient to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 547).  In evaluating the sufficiency of the complaint, the court generally looks only to the face of the complaint and the documents attached thereto.  *Hal Roach Studios,*

United States District Court
Northern District of California

*Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990).

A complaint is "frivolous" under § 1915 when the court has no subject matter jurisdiction. *See Pratt v. Sumner*, 807 F.2d 817, 819 (9th Cir. 1987) (a complaint should be dismissed as frivolous under § 1915 where subject matter jurisdiction is lacking). Federal courts have limited jurisdiction and may hear only cases where Congress has granted jurisdiction by statute. Two commonly invoked jurisdictional statutes are 28 U.S.C. § 1331 ("federal question jurisdiction") and 28 U.S.C. § 1332 ("diversity jurisdiction"). Section 1331 provides jurisdiction to hear cases that "arise under" the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331. A case "arises under" federal law when federal law creates the cause of action or the vindication of a right under state law necessarily turns on some construction of federal law. *See Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088 (9th Cir. 2002). The existence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 (9th Cir. 2002). Section 1332 grants jurisdiction to hear cases where no plaintiffs are citizens of the same state as any defendants and the amount in controversy is more than $75,000. *See* 28 U.S.C. § 1332.

**B.    Civil Conspiracy Under 42 U.S.C. § 1985(3)**

The Supreme Court has held that in order to state a claim under 42 U.S.C. § 1985(3), the following elements must be alleged:

> [A] complaint must allege that the defendants did (1) "conspire or go . . . on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

*Griffin v. Breckenridge*, 403 U.S. 88, 103 (1971) (quoting 42 U.S.C. § 1985(3)). To establish the second element, the plaintiff must show that: 1) a protected right has been violated, and 2) the violation was motivated by "an invidiously discriminatory class-based animus." *Life Ins. Co. of N. Am. v. Reichardt*, 591 F.2d 499, 502-03 (9th Cir.1979). Section 1985(3) itself provides no

6

United States District Court
Northern District of California

1   substantive rights.  *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979).  The

2   rights, privileges and immunities that section 1985(3) vindicates must be found elsewhere.

3           Plaintiff's claim fails because he has not alleged sufficient facts to demonstrate that a

4   protected right has been violated.  In particular, although he alleges that his Sixth Amendment

5   right to the effective assistance of counsel has been violated, that right only adheres in criminal

6   proceedings.  *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall . . . have

7   the assistance of counsel for his defense");  *see also Meeks v. HMS Host,* No. 11-1021 CW, 2011

8   WL 5416191, at *6 (N.D. Cal. Nov. 8, 2011) *aff'd sub nom*. *Meeks v. Host Int'l, Inc*., 519 F.

9   App'x 513 (9th Cir. 2013) ("a right to effective assistance of counsel arises only in criminal

10   proceedings").  The alleged wrongful conduct in this case did not occur in the context of a

11   criminal proceeding.

12           Plaintiff also alleges that his right to Due Process under the Fourteenth Amendment was

13   violated, but due process violations under the Fourteenth Amendment requires that the relevant

14   conduct be performed by a state actor.  *Jackson v. Metro. Edison Co*., 419 U.S. 345, 349

15   (1974)(holding that Fourteenth Amendment clause applies only to deprivations by the state and

16   and that it "offers no shield" against "private conduct, however discriminatory or wrongful").

17   Similarly, the Fifth Amendment due process clause applies only to conduct by the federal

18   government.  *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008).  Here, none of the alleged

19   conduct was carried out by any state actor or the federal government and therefore, Plaintiff has

20   not alleged sufficient facts to show that his right to due process was violated.

21           Plaintiff's claim under 42 U.S.C. § 1985(3) is also insufficiently pled because he has not

22   alleged that any of the conduct at issue was motivated by class-based discriminatory animus

23   within the meaning of the statute.  The Supreme Court has found that "[t]he language requiring

24   intent to deprive of equal protection . . . means that there must be some racial, or perhaps

25   otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Griffin

26   v. Breckenridge*, 403 U.S. 88, 102 (1971).  The Ninth Circuit has noted that courts have" struggled

27   to determine whether and when § 1985(3) applies in contexts not involving race." *Sever v. Alaska

28   Pulp Corp*., 978 F.2d 1529, 1536 (9th Cir. 1992).  In *Sever*, the court explained:

> Generally, our rule is that section 1985(3) is extended beyond race "only when the class in question can show that there has been a governmental determination that its members 'require and warrant special federal assistance in protecting their civil rights.'" *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir.1985) (quoting *DeSantis v. Pacific Telephone & Telegraph Co.*, 608 F.2d 327, 333 (9th Cir.1979)). More specifically, we require "either that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." *Id*. This rule operates against a background rule that "42 U.S.C. § 1985(3) is not to be construed as a general federal tort law." *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1518–19 (9th Cir.1987).

*Id*.  The only class of which Plaintiff has alleged he was a member is the certified class in the Zyprexa Action.  That class, however, does not qualify as a suspect or quasi-suspect classification; nor is there any legislation that has demonstrated that this is a protected class akin to race.  Therefore, even assuming Plaintiff adequately alleged that the conduct at issue was motivated by discriminatory animus based on Plaintiff's membership in the certified class in the Zyprexa Action, that allegation would not be sufficient to meet the second requirement for stating a claim under § 1985(3).

Because Plaintiff cannot cure the deficiencies identified above by amendment, Plaintiff's civil conspiracy claim under 42 U.S.C. § 1985(3) is dismissed with prejudice. [2]

### C.   Malpractice and Breach of Fiduciary Duty Claims

Plaintiff asserts a claim for professional negligence arising out of legal malpractice against the Mulligan Law Firm, as well as a claim for breach of fiduciary duty.  To state a claim for

---

[2] Because Plaintiff's only claim under federal law fails as a matter of law, there is no federal question jurisdiction in this case under 28 U.S.C. § 1331.  Plaintiff has adequately alleged diversity jurisdiction, however, under 28 U.S.C. § 1332.  First, he has alleged that he is a citizen of California while Defendants Mulligan Law Firm and Garretson Law Firm are citizens of Texas and Nebraska, respectively.  Second, the good faith allegations in Plaintiff's complaint place a sufficient amount in controversy, even though Plaintiff has not alleged a specific amount, because Plaintiff alleged that he suffered a catastrophic injury as a result of taking Zyprexa (the amputation of his lower leg) and he was denied recovery from a $2.5 million Extraordinary Injury Fund in the Zyprexa Action.  In light of these allegations, the Court cannot say, to a legal certainty, that the amount in controversy is less than $75,000.  *See Bayol v. Zipcar, Inc.*, No. 14-CV-02483-TEH, 2015 WL 4931756, at *5 (N.D. Cal. Aug. 18, 2015) (holding that the "legal certainty" or "legal possibility" test applies to actions that are originally filed in federal court (citing *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102 (9th Cir. 2010)).

United States District Court
Northern District of California

professional negligence arising out of legal malpractice, a plaintiff must establish the following elements:  1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; 2) breach; 3) causation; and 4) damage. *Martorana v. Marlin & Saltzman*, 175 Cal. App. 4th 685, 693, (2009) (citations and internal quotations omitted).  The elements of a cause of action for breach of fiduciary duty are: 1) existence of a fiduciary duty; 2) breach of the fiduciary duty; and 3) damage proximately caused by the breach.  *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (1995) (citations omitted).  A breach of fiduciary duty owed by counsel to a client constitutes malpractice. *Knight v. Aqui*, 966 F. Supp. 2d 898, 996 (N.D. Cal. 2013). Where a claim for professional negligence is based on a breach of fiduciary duty (as opposed to a failure of advice leading to a failure on the merits in the underlying action), the analysis is "functionally the same" for both types of claims.

Here, Plaintiff has alleged facts sufficient to support an inference that his former counsel breached a fiduciary duty to him and therefore also committed malpractice.  First, in alleging that the settlement agreement negotiated by Plaintiff's counsel in the Zyprexa Action gave rise to a conflict of interest and that counsel pressured class members to submit releases immediately so they could recover their fees, Plaintiff has sufficient alleged that the Mulligan Law Firm breached its "ethical duties of good faith and fidelity, which are owed by an attorney to his or her client" and therefore engaged in legal malpractice.  *See Schultz v. Harney*, 27 Cal. App. 4th 1611, 1621 (1994), *as modified on denial of reh'g* (Sept. 29, 1994);  *see also Santa Clara Cnty. Counsel Attys. Assn. v. Woodside*, 7 Cal. 4th 525, 548 (1994) ("It is . . .  an attorney's duty to protect his client in every possible way, and it is a violation of that duty for him to assume a position adverse or antagonistic to his client without the latter's free and intelligent consent. . . . By virtue of this rule an attorney is precluded from assuming any relation which would prevent him from devoting his entire energies to his client's interests") (quoting *Anderson v. Eaton*, 211 Cal. 113, 116 (1930)).

Plaintiff has also alleged that the Mulligan Law Firm breached its duty to communicate with him by failing to respond to his inquiries expressing concern about signing a release prior to receiving a determination as to his EIF application.  *See* CA ST RPC Rule 3-500 ("A member shall keep a client reasonably informed about significant developments relating to the employment

9

1  or representation, including promptly complying with reasonable requests for information and

2  copies of significant documents when necessary to keep the client so informed").

3       Finally, Plaintiff has adequately alleged that he was harmed by counsel's conduct in that he

4  alleges that he has waived his right to sue for his injury resulting from his use of Zyprexa and has

5  received no compensation for his "extraordinary injury."

6       Accordingly, the Court concludes Plaintiff's claims for professional negligence and breach

7  of fiduciary duty are sufficient to survive the preliminary review required under 28 U.S.C. § 1915.

## IV.  CONCLUSION

     The Court finds that Plaintiff's claims for professional negligence and breach of fiduciary

against Defendants Patrick J. Mulligan and the Mulligan Law Firm are sufficient to survive the

Court's preliminary review under 28 U.S.C. § 1915.  Accordingly, the U.S. Marshal shall serve

the Complaint, a copy of this Order, and any scheduling orders on those Defendants.  Plaintiff's

claim under 42 U.S.C. § 1985(3) is dismissed with prejudice for the reasons stated above.

Because no claims against Defendants Matthew L. Garretson and the Garretson Law Firm remain,

those defendants are dismissed.  The Case Management Conference set for **September 11, 2015** is

continued to **December 11, 2015 at 2 p.m**. to allow time for service of the Complaint on Patrick J.

Mulligan and the Mulligan Law Firm.

     **IT IS SO ORDERED.**

Dated:  September 3, 2015

_____

JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California

10